AKERS ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* ALONZO
ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *Akers v. Alonzo* (1992), 65 Ohio St.3d 422.]

(No. 91–1947—Submitted September 23, 1992—Decided December 11, 1992.)

*Ochsenbein, Cole & Lewis* and *Richard M. Lewis,* for appellees and cross-appellants.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Karen L. Clouse* and *William A. Davis,* for appellants and cross-appellees.

SWEENEY, J.   The determinative issue in this cause is whether plaintiffs' action against Dr. de Lamerens was timely filed pursuant to R.C. 2305.11 and controlling precedents.   For the reasons that follow, we answer this issue in the affirmative, thereby affirming the judgment of the court of appeals below.

With respect to the issue on appeal, defendants contend that under *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, and *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, Mr. Akers was chargeable with knowledge in October 1984 that the symptoms of which he had complained since March 1984 were due to cancer of the bladder, and that he was aware or should have been aware that there was some change in his diagnosis as of October 1984.   Defendants assert that the change in the course of Akers's treatment was sufficient to place him on notice of the extent and seriousness of his condition, and that the "cognizable event" took place when he first learned he had cancer and began to receive chemotherapy treatments in October 1984 or, at the latest, in June 1987 when he terminated his relationship with Holzer Clinic, Ltd.   In support of their argument, defendants rely on this court's recent decision in *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284.   Defendants further submit that Akers should have known that more than one physician was involved because that is the common practice in a modern hospital setting.

In reviewing the controlling precedents, this court notes that a cause of action for medical malpractice accrues and the R.C. 2305.11 limitations period begins to run either (1) when the patient discovers or, in the exercise of

reasonable care and diligence should have discovered, the resulting injury, or (2) when the physician-patient relationship for the condition terminates, whichever occurs later. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, syllabus; *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, paragraph one of the syllabus.

In *Hershberger* and *Allenius, supra,* we set forth and clarified an analysis to determine the accrual date for a medical malpractice claim, wherein the occurrence of a "cognizable event" will trigger the running of the statute of limitations. In *Allenius, supra,* 42 Ohio St.3d at 134, 538 N.E.2d at 96, we noted that a "cognizable event" is "some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment *or diagnosis* has taken place." (Emphasis added.) See, also, *Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 550 N.E.2d 159.

More recently, in *Flowers, supra,* this court held in the syllabus that " * * * [t]he occurrence of a 'cognizable event' imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors."

Contrary to defendants' assertions, we do not believe that *Flowers* compels a reversal of the court of appeals' judgment below, but rather find it to be readily distinguishable from the cause *sub judice.* In *Flowers, supra,* the patient was aware that other persons were involved in the faulty interpretation of her mammogram, but she was not aware of their identities. When Mrs. Flowers discovered approximately eight months later she had cancer, that discovery constituted the "cognizable event" which gave rise to a duty to ascertain the identity of the tortfeasors who misinterpreted her prior mammogram. In contradistinction, there is nothing in the record herein that indicates that plaintiffs knew or should have known before March 21, 1989 that the pathology slides had been erroneously diagnosed as being negative for cancer. The "cognizable event" in the instant cause took place when plaintiffs discovered through an expert pathologist they had employed during the initial lawsuit that the pathology slides had been misread by Dr. de Lamerens and that Akers actually had cancer eight months before it was correctly diagnosed. Mrs. Akers has stated in two affidavits that neither she nor her husband was aware of Dr. de Lamerens' role in diagnosing the pathology slides or that such slides were even in existence, let alone that they had been misinterpreted by some physician other than Dr. Alonzo.

While *Flowers, supra,* holds that the occurrence of the cognizable event imposes a duty of inquiry on the plaintiff, it does not hold that the plaintiff has a duty to ascertain the cognizable event itself, especially in a situation such as here, where the patient had no way of knowing either that there had

been another physician involved or that that other physician had made an incorrect diagnosis.

Given the fact that plaintiffs filed their action pursuant to R.C. 2305.11, *i.e.,* within one year of discovering the cognizable event, we hold that the court of appeals correctly reversed the summary judgment rendered below.

Turning our focus to the issue on cross-appeal, plaintiffs contend that the loss of a legal cause of action pursuant to a statute of limitations due to fraudulent concealment of material information by a physician constitutes the harm or injury element of a cause of action in fraud. See *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.

However, given our holding on the main issue on appeal, we believe the cross-appeal issue is moot, since plaintiffs have not "lost" their cause of action due to the applicable statute of limitations.

Based on all the foregoing, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The majority correctly states the law governing the statute of limitations in medical malpractice cases and accurately sets forth the unusual facts of this case. My dispute with the court concerns its application of those facts to the settled law.

The facts stated by the majority reveal four relevant events which, in my view, decide this case. (1) *March 1984: Alonzo informs Akers there is no evidence of cancer.* Mr. Ralph Akers consulted with Dr. R.H. Alonzo to determine why he was passing blood in his urine. At that time Alonzo performed biopsies of Akers' bladder, had the tissue samples analyzed by Dr. de Lamerens, and told Akers that there was no evidence of cancer. (2) *May 1984: Alonzo informs Akers a second time there is no evidence of cancer.* Alonzo performed another round of biopsies, had the bladder tissue analyzed, and again informed Akers that there was no evidence of cancer. (3) *September 1984: Alonzo informs Akers a third time there is no evidence of cancer.* Alonzo performed a third set of biopsies and for a third time told Akers that the biopsies did not reveal cancer. (4) *October 1984: Wise informs Akers that he has cancer and recommends chemotherapy.* Still unable to determine the reason Akers had blood in his urine, Alonzo referred Akers to Dr. Henry Wise. In October 1984, Wise examined Akers. Wise had a pathologist reanalyze the same pathology slides prepared from the biopsies taken by Alonzo; Wise did not perform additional biopsies on Akers. From his exami-

nation and the pathology slides, Wise concluded that Akers had cancer of the bladder and recommended that he begin chemotherapy.

I believe that Wise's telling Akers of the bladder cancer was the cognizable event which triggered the beginning of the statutory limitations period. As a result of Wise's prompt diagnosis, which was based on the very same tissue samples taken by Alonzo, Akers should have known that Alonzo's failure to diagnose cancer was suspect.

In *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284, 1287–1288, this court explained what constitutes a "cognizable event":

"A 'cognizable event' is the occurrence of facts and circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which she complains is related to a medical diagnosis, treatment, or procedure that the patient previously received. * * *

"Moreover, *constructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. * * * A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. * * * Rather, the 'cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." (Citations omitted; emphasis *sic*.)

The test, as articulated by the California Court of Appeals, " 'is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation.' " *Graham v. Hansen* (1982), 128 Cal.App.3d 965, 972, 180 Cal.Rptr. 604, 609 (quoting *McGee v. Weinberg* [1979], 97 Cal.App.3d 798, 803, 159 Cal.Rptr. 86, 89–90).[2]

The "cognizable event" approach strikes the proper balance between the interest of fairness to the injured party and the basic purpose of a statute of limitations. It does not require individuals to pursue their legal rights and remedies until they reasonably could be expected to be aware of their injuries. It does recognize, however, that the central purpose of a statute of limitations is to require plaintiffs to bring their claims as quickly as possible. See *Summers v. Connolly* (1953), 159 Ohio St. 396, 401, 50 O.O. 352, 355, 112 N.E.2d 391, 394 ("sound public policy justifies a limitation for commencement of actions because of 'the difficulty of preserving evidence, the frailty of the memory, and the contingency of the death of witnesses' "); *Douglas v. Corry*

---

2. This test has been cited with approval in *Flowers, supra; Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 135, 538 N.E.2d 93, 97 (Moyer, C.J., concurring); and *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 5, 516 N.E.2d 204, 207.

(1889), 46 Ohio St. 349, 354, 21 N.E. 440, 442 ("[t]he policy of the statute is based upon the evanescent character of all testimony, and the consequent difficulty of making a defense to any claim, after the lapse of a number of years").

The balance is thrown askew when the court applies the "cognizable event" test as loosely as it does today. In this case the court has permitted the plaintiff to turn a blind eye to Dr. Alonzo's alleged failure to diagnose bladder cancer. Akers was told on three consecutive occasions by Alonzo that he *did not* have cancer. He was then told by Dr. Wise, who based his diagnosis on the same information used by Alonzo, that he *did* have cancer. This, clearly, would have alerted a reasonable person that Alonzo's diagnosis may have been faulty. If in October 1984 Akers had inquired into Alonzo's then recent conclusion that he did not have cancer, he quickly would have discovered that Dr. de Lamerens was the individual responsible for examining and interpreting the bladder tissue. He then could have decided whether to pursue an action against de Lamerens.

The "cognizable event" analysis is profoundly weakened if the plaintiff is not required to explore the circumstances of her injury until she has actual knowledge of the alleged malpractice. This is why this court has stressed that *constructive knowledge* of facts which suggest malpractice is sufficient to start the running of the statute of limitations. See *Flowers, supra,* 63 Ohio St.3d at 549, 589 N.E.2d at 1287. It is unlikely that the majority in this case intended to embrace an "actual knowledge" test. Yet, reading the facts together with the decision reached by the majority would lead one to believe that the statute of limitations did not begin to run on the Akerses' claim against de Lamerens until the Akerses gained actual knowledge in 1989 of the legal significance of de Lamerens' alleged misdiagnosis.

I do not mean to imply by this dissent that the court's opinion has weakened the precedent set by *Flowers, supra; Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 550 N.E.2d 159; and *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93. To the contrary, I wish only to state my firm disagreement with the majority's treatment of this uncommon factual scenario within the analytic framework established by these cases.

I would hold that the cognizable event occurred in October 1984 when Akers was diagnosed by Wise as having bladder cancer and was advised to begin chemotherapy. I believe that the trial court correctly granted de Lamerens' motion for summary judgment and that the judgment of the court of appeals should be reversed. I respectfully dissent.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.