On September 12, 1996, Florence Marie Robinette and Donald Robinette filed a complaint in the Franklin County Court Common Pleas against Orthopedics, Incorporated, Peter E. Johnston, D.O., and Doctors Hospital. Ms. Robinette averred Dr. Johnston was employed by Orthopedics, Incorporated and/or Doctors Hospital and claimed, in part, that Dr. Johnston failed to exercise reasonable care in diagnosing and treating Ms. Robinette and in failing to obtain her informed consent for treatment. Mr. Robinette alleged loss of consortium.
By way of background, Dr. Johnston performed back surgery on Ms. Robinette on March 14, 1994. Specifically, the surgery consisted of "* * * a bilateral partial lamenectomy at L4 and L5, bilateral excision of nucleus pulposus at L4-L5, and partial lamenectomy at L5-S1 on the left with excision of nucleus pulposus." (Florence Robinette affidavit.) Ms. Robinette continued seeing Dr. Johnston for follow-up until September 8, 1994. (Johnston affidavit.) Ms. Robinette experienced pain at various times after the surgery. Ms. Robinette alleged she did not learn until March 20, 1995 that the pain she was experiencing was possibly connected to the March 14, 1994 surgery.
Orthopedics, Incorporated and Dr. Johnston filed an answer asserting, in part, that the claims were barred by the applicable statutes of limitations.
On May 28, 1997, Orthopedics, Incorporated and Dr. Johnston filed a motion for summary judgment on two grounds: (1) the claims were barred by the applicable statutes of limitations; and (2) Mr. Robinette's claim for loss of consortium was precluded because he was not married to Ms. Robinette at the time of the alleged negligence. The Robinettes filed a memorandum contra, and Orthopedics, Incorporated and Dr. Johnston filed a reply.
On September 10, 1997, the trial court rendered a decision, granting summary judgment in favor of Orthopedics, Incorporated and Dr. Johnston on both the medical malpractice claim and the loss of consortium claim. A judgment entry was journalized on September 19, 1997, finding that pursuant to Civ.R. 54(B), final judgment was rendered in favor of Orthopedics, Incorporated and Dr. Johnston, and there was no just reason for delay. The claim(s) against Doctors Hospital remained pending.
The Robinettes have appealed to this court, assigning the following as error:
 The Trial Court erred when it found that the cognizable event occurred prior to the termination of the patient-physician relationship and that the statute of limitations began to run on September 8, 1994.
We note that the Robinettes have not assigned as error the trial court's granting of summary judgment in favor of Orthopedics, Incorporated and Dr. Johnston (hereinafter collectively referred to as "appellees") on the loss of consortium claim. Hence, while the Robinettes have both appealed, only the medical malpractice claim of Ms. Robinette (hereinafter "appellant") is at issue in this appeal.
The issue before this court is whether summary judgment in favor of appellees was appropriate on the ground the statute of limitations had run. The trial court found appellant's medical malpractice claim was barred by the one-year statute of limitations.[1] Specifically, the trial court found that the statute of limitations began to run on September 8, 1994, the last day appellant was seen by Dr. Johnston.
R.C. 2305.11(B)(1) contains the statute of limitations for medical malpractice claims and states:
 Subject to divisions (B)(2) and (3) of this section, an action upon a medical * * * claim shall be commenced within one year after the cause of action accrues, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical * * * claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.
A line of cases from the Supreme Court of Ohio has set forth how to determine when a cause of action for medical malpractice accrues. In Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph one of the syllabus, the Supreme Court held that a cause of action for medical malpractice accrues and the one-year statute of limitations begins to run when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury or when the physician-patient relationship for that condition terminates, whichever is later.
In Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1, paragraph one of the syllabus, the Supreme Court further explained how to determine the accrual date and held that a trial court must look to the particular facts and make the following determinations: when the injured party became aware or should have become aware of the extent and seriousness of the condition; whether the injured party was aware or should have been aware that such condition was related to a specific professional medical service previously rendered; and whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition.
The "extent and seriousness of [the] condition" language inHershberger requires there be an occurrence of a "cognizable event" which leads or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered, and such cognizable event does or should place the patient on notice of the need to pursue possible remedies. Allenius v.Thomas (1989), 42 Ohio St.3d 131, syllabus. Specifically, the occurrence of a cognizable event imposes upon the plaintiff the duty to determine whether the injury suffered is the proximate result of malpractice and ascertain the identity of the tortfeasor(s). Flowers v. Walker (1992), 63 Ohio St.3d 546, syllabus.
In the case at bar, appellant contends the cognizable event took place, at the earliest, on March 20, 1995, the date she visited a different physician. Appellees assert the cognizable event consisted of the onset of symptoms after the March 14, 1994 surgery. Appellees contend such symptoms should have put appellant on notice of a potential claim, and appellant was obligated to investigate. Appellees state that: appellant's pain began almost immediately after surgery; Dr. Johnston recommended further evaluation by a specialist; appellant disregarded such recommendation; and appellant had constructive knowledge of symptoms such that she had a duty to investigate a potential claim.
We note that we are addressing this issue in the context of summary judgment proceedings. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. The moving party has the initial burden of demonstrating there is no genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,292. If reasonable minds can come to different conclusions as to when the cognizable event occurred, summary judgment is inappropriate. See Fisher v. Deerhake (1987),41 Ohio App.3d 139, 141. Our review as to the appropriateness of summary judgment is de novo. See Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35.
We find, based upon the record before us, that reasonable minds could come to different conclusions about when the cognizable event occurred, and appellees failed to conclusively establish when the cognizable event occurred. Therefore, summary judgment in favor of appellees on statute of limitations grounds was inappropriate.
There is little evidence in the record.[2] As indicated above, Dr. Johnston performed back surgery on appellant on March 14, 1994. Appellant continued seeing Dr. Johnston for follow-up until September 8, 1994. (Johnston affidavit.) Specifically, on March 29, 1994, April 12, 1994, May 3, 1994, June 23, 1994, June 30, 1994 and September 8, 1994, appellant saw Dr. Johnston and expressed "complaints of pain." Id. On April 12, 1994, appellant also complained of back and leg pain. Id. On June 23, 1994, Dr. Johnston recommended further evaluation with a specialist and testing, but appellant did not wish to proceed with these recommendations. Id. On September 8, 1994, Dr. Johnston recommended a referral for a second opinion. Id.
Appellant stated that her recovery from the surgery appeared normal until March 1995. (Florence Robinette affidavit.) On March 20, 1995, appellant saw Warren H. Leimbach, II, M.D. In a March 20, 1995 letter to Robert Skully, M.D., Dr. Leimbach stated that appellant was having a lot of pain in her low back in summer 1994. The pain started in her hip, and most of the pain radiated into her anterior thigh.
Dr. Leimbach stated in the letter that appellant originally saw her obstetrician and was put on hormone replacement. This made the pain better. When appellant was not on the estrogen, she "knew the difference." This course of treatment would reasonably raise a question as to the cause of the pain and divert appellant away from the back surgery as a potential. Dr. Leimbach reported that appellant was in pain when she lay flat on her back and when she sat down and remained idle.
Dr. Leimbach's physical examination of appellant showed, in part, excellent strength in her upper and lower extremities, absence of a left ankle jerk and weak left hip flexion. Dr. Leimbach stated that, clinically, appellant had an L4 radiculopathy even though her reflexes were intact. He indicated he could not explain why appellant's pain was not constant or why it was worse when appellant was lying down. Dr. Leimbach stated that he worried appellant had had three-level surgery. He stated he was not sure appellant ever gave her back time to heal. Dr. Leimbach's plans included an MRI scan and, if that showed nothing, he would put her in a course of physical therapy.
Appellant stated that she was unaware of any connection between the pain she suffered and the March 14, 1994 surgery until her March 20, 1995 visit with Dr. Leimbach. (Florence Robinette affidavit.)
The above constitutes, essentially, all the evidence on the issue of when the cognizable event occurred. Appellees' position is that the onset of pain shortly after the surgery constituted the cognizable event. We disagree. As stated inAllenius, at 133-134, the cognizable event is a "noteworthy" event. A reasonable person would not necessarily find pain shortly after three-level back surgery a noteworthy event. As stated in Fisher at 141, pain is a natural consequence of surgery and is not necessarily sufficient to put a plaintiff on notice of an injury resulting from malpractice.
In addition, nowhere in his affidavit did Dr. Johnston indicate what he thought of appellant's complaints of pain. Dr. Johnston simply said appellant complained of pain, and he twice recommended referral for further evaluation, a second opinion, and other testing. Dr. Johnston never stated what his opinion was. There is no indication that Dr. Johnston connected the pain with the surgery.
As stated in Herr v. Robinson Memorial Hosp. (1990), 49 Ohio St.3d 6,9, a patient relies almost wholly upon the judgment of his or her physician, and it would be illogical to hold a patient to a higher degree of knowledge than the treating physician. The evidence here indicates appellant was never told by Dr. Johnston that her pain was the result of the surgery, and appellant stated she made no connection between the pain and the surgery until March 20, 1995. As in Herr, therefore, the facts here indicate that appellant's pain alone did not constitute a cognizable event.
Appellees also emphasize that appellant chose to disregard Dr. Johnston's recommendations for further evaluation and testing. However, the record is unclear as to why Dr. Johnston so recommended. Was Dr. Johnston unable to ascertain the cause of appellant's continuing pain? Did he connect the pain to appellant's surgery, or did he believe the pain was related to the same condition? While the case law does require a plaintiff to investigate and make further inquiry as to the cause of his or her condition, such inquiry need not occur until the cognizable event actually occurs. See Allenius, paragraph one of the syllabus; Flowers, syllabus. The evidence, construed most strongly in favor of appellant, indicates the cognizable event did not occur until March 20, 1995.
We also point out that the evidence indicates appellant did see another physician prior to seeing Dr. Leimbach. Appellant saw her obstetrician and upon being placed on estrogen, her condition improved. This evidence further supports our conclusion that the cognizable event did not occur until appellant's visit with Dr. Leimbach. Nothing in the record before us indicates that hormone replacement and a resulting improvement are connected to a prior back surgery.
Given the treatment by her obstetrician and the fact that appellant, according to a reasonable reading of the evidence, was never told by Dr. Johnston that her pain was related to the surgery, we cannot say a reasonable person would or should have been alerted that an improper medical procedure, treatment or diagnoses had occurred. Again, appellees have not shown that appellant's pain alone constituted the cognizable event. As stated in Akers v. Alonzo (1992), 65 Ohio St.3d 422, 425, a plaintiff does not have a duty to ascertain the cognizable event itself.
At the very least, the evidence, construed most strongly in favor of appellant, raises a genuine issue of material fact as to when the cognizable event occurred. If the cognizable event did not occur until March 20, 1995, then appellant timely filed her claim under R.C. 2305.11 (B)(1) by sending appellees a notice letter on March 20, 1996 and by filing suit within one hundred eighty days of such notice. Therefore, summary judgment in favor of appellees on statute of limitations grounds was inappropriate. Accordingly, appellant's assignment of error is sustained.
Having sustained appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to such court to conduct further proceedings.
Judgment reversed and cause remanded.
PETREE, J., concurs.
LAZARUS, P.J., concurs separately.
[1] The trial court erroneously stated at page 2 of its decision that the statute of limitations for medical malpractice cases is contained in R.C. 2305.11(A). While this section previously set forth the statute of limitations in medical malpractice cases, it has been amended, and the statute of limitations for such claims is now contained in R.C. 2305.11 (B)(1).
[2] The record on appeal includes two depositions taken on September 5, 1997. The trial court's decision was rendered on September 10, 1997, and the judgment entry was journalized on September 19, 1997. The depositions (of Ms. and Mr. Robinette) were not filed until September 24, 1997. As such, they were not timely filed for purposes of the summary judgment motion at issue, and we will not consider them. See Civ.R. 56(C). We note that neither party has referred to such depositions.