Appellant Deborah Katz appeals a decision by the trial court granting summary judgment in favor of appellees Bahman Guyuron, William Fisher, and Jay Resnick in her action for medical and dental malpractice. Katz assigns the following three errors for our review:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS/ APPELLEES. WHERE THERE IS A QUESTION OF FACT AS TO WHEN THE COGNIZABLE EVENT OCCURRED WHICH TOLLED THAT STATUTE OF LIMITATIONS IN A MEDICAL MALPRACTICE CASE, SUMMARY JUDGMENT IS IMPROPER AS A MATTER OF LAW.
 II. THE TRIAL COURT FAILED TO RECOGNIZE GENUINE ISSUES OF MATERIAL FACT WHICH EXIST AS TO THE SEPARATE AND DISTINCT CAUSE OF ACTION FOR FRAUD AGAINST A PHYSICIAN IN A MEDICAL MALPRACTICE CASE.
 ACCORDINGLY, THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS/APPELLEES.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IF (sic) FAILING TO EVEN CONSIDER THAT APPLICATION AND CONSTITUTIONALITY OF THE STATUTE OF REPOSE.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On January 25, 1997, Katz, a licensed attorney, filed a complaint against dentists Bahman Guyuron, William Fisher, Jay Resnick, and their employer corporations alleging medical malpractice and fraud. In her complaint, Katz alleged that, on June 14, 1980, she visited Dr. Charles Babbush, an oral maxillofacial surgeon, complaining of lower bite problems and mouth pain. Babbush diagnosed her condition as temporomandibular joint disorder (TMJ) and a wandering bite. In the summer of 1984, Guyuron performed upper and lower jaw surgery on Katz. After the surgery, Katz's mouth was wired closed for three months. However, after the wire was removed, the position of her jaw and bite shifted, resulting in the return of her pre-surgery symptoms.
Katz's complaint further alleged that, in September of 1985, she underwent tongue reduction surgery and an open mandibular osteotomy but experienced little or no relief. Again, her jaw remained wired closed for three months and upon removal of the wire, her jaw bones separated and shifted from their post-surgical position. Katz alleged she was never told of the shift, despite continuously visiting Resnick and Fisher for teeth cleaning and continued orthodontic treatment.
In mid 1989, Katz consulted another dentist, Dr. Dante Colosimo, for treatment of her pain and open bite. Colosimo referred her to Dr. David Monfort who, upon examining Katz and reviewing her dental history, decided to consult with Dr. Robert Hinkle to form a treatment plan. On July 15, 1996, Dr. Monfort informed Katz that her continuing dental problems were related to the dental treatment she received in 1985.
In her complaint, Katz alleged that the defendants did not tell her that her jaw shifted after her 1985 surgery and instead led her to believe that her condition could not be corrected and that she would have to learn to live with it. She alleged that she continues to suffer chronic pain, the inability to fully close her mouth, shoulder and neck problems, depression, anxiety and will need continued dental/surgical treatment due to the 1985 surgery. The complaint sought damages in the amount of $3.2 million dollars, along with punitive damages, attorney fees, and costs.
On December 12, 1997, the three doctors each filed a motion for summary judgment, alleging that Katz's medical malpractice action was barred by the one year statute of limitations set forth in R.C. 2305.11. Dr. Guyuron attached excerpts from Katz's deposition in which she stated that her symptoms returned pretty quickly after the 1985 surgery and that they were more severe than before. She described her post-surgical symptoms as numbness, intense pain, neck stiffness, and facial muscle spasms. She stated that the post-surgical shift in her bite was noticeable to her. Katz stated in her deposition that her fraud claims against Drs. Fischer, Guyuron, and Resnick were based on their failure to tell her that the surgery had been unsuccessful which she equated to a representation that everything went well. (Katz Depo. At 151; 156.) Katz also stated:
 This was a group working as a team. As a team, I would expect that they're sharing information, x-rays, reports, whatever. They had to base follow-up treatment on something.
 And so I believe that he knew or he was providing treatment without full information.
(Katz Depo. at 152.) Guyuron also attached an affidavit in which he averred that his last treatment or examination of Katz was on May 23, 1988.
Resnick incorporated Guyuron's motion for summary judgment into his motion and attached an affidavit in which he averred that his last treatment or examination of Katz was on October 5, 1991. Fisher also sought summary judgment on the basis of the statute of limitations and averred via an attached affidavit that his last treatment or examination of Katz was on May 29, 1987.
The defendants all alleged that Katz became aware of her injuries before the end of her patient-physician relationship with them and that her claims were barred because they were not filed within one year after the patient-physician relationship ended as required by R.C. 2305.11(A). Katz responded that the defendants led her to believe that the continuation of her symptoms after the 1985 surgery was indicative of her own personal physiology and healing. (Katz's Brief Opp. Summary Judgment at 9.) She maintained that she did not become aware of the underlying problem until her consultation with Dr. Monfort.
The trial court granted the defendants' motion for summary judgment and concluded as follows:
 Katz should not have expected to suffer the same ailments after her care and treatment.
 She should have known that the difficulties she had either resulted from the surgery or were not remedied because the surgery and dental care fell below the standard of care in the medical community. Katz should have filed suit at least in May of 1989.
(Trial court's journal entry of 4/5/99 at 2.) The court also found that Katz failed to sufficiently allege a fraud claim:
 [I]t appears obvious that the failure to admit to [Katz] that the surgery and/or other procedures were unsuccessful relates to care and treatment and, thus, constitutes a [medical] claim and not fraud. Even if the Court were to accept the claim as one sounding in fraud, the four-year statute should begin to run from 1989, which renders the complaint time-barred yet again.
(Trial court's journal entry of 4/5/99 at 2.) This appeal followed.
In her first assignment of error, Katz argues the trial court improperly granted summary judgment where there was a question of fact as to when the cognizable event occurred which triggered the statute of limitations.
Under R.C. 2305.11(B)(1), an action for medical or dental malpractice must be brought within one year after the cause of action accrues or the end of the physician-patient relationship, whichever is later. Frysinger v. Leech (1987), 32 Ohio St.3d 38,512 N.E.2d 337, at paragraph one of the syllabus. See, also, Akers v. Alonzo (1992), 65 Ohio St.3d 422, 424-425, 605 N.E.2d 1,7. See also Wiggins v. Waltz (Sept. 30, 1999), Cuyahoga App. No. 74864, unreported. A cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury. Allenius v. Thomas (1989), 42 Ohio St.3d 131, 133, 538 N.E.2d 93, 95, citing Oliver v. Kaiser Community Health Found. (1983), 5 Ohio St.3d 111,449 N.E.2d 438, at paragraph one of the syllabus.
The test for determining the accrual date of the injury was set forth by the Ohio Supreme Court in Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, at paragraph one of the syllabus. The Hershberger court held that, after examining the facts of the case, the trial court must determine when the plaintiff knew or should have known of the extent and seriousness of his condition, that the condition was related to prior medical treatment, and if the condition would put a reasonable person on notice that he should seek further information about the cause of the condition. The court modified the test in Allenius. [W]e do not believe that a patient must be aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the "cognizable event," has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place. If a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff to the necessity for investigation and pursuit of her remedies.
Allenius, 42 Ohio St.3d at 133-134, 538 N.E.2d at 96, (citation omitted.) See, also Laidley v. St. Luke's Med. Ctr. (June 3, 1999), Cuyahoga. App. No. 73553, unreported; Sreshta v. Kaydan (May 6, 1999), Cuyahoga App. No. 74081, unreported.
In this case, Katz admitted that, after the 1985 surgery, her symptoms did not just continue, but were actually worse than before.
 Q: How about after the osteotomy in `85 with Dr. Guyuron, how did you feel after that one?
A: Not well.
 Q: And was this anything other than we've discussed already; the same things came back or * * *
A: Yeah. My bite shifted and a host of problems.
 Q: How quickly after the `85 surgery did your bit shift and the problems return?
A: Pretty quickly.
Q: Can you be more specific?
 A: Well, I mean, what I'm remembering is that I was going back to see my doctors pretty frequently because there were problems.
 Q: Now, were these any different than the problems you had had before? Any more severe? Any less severe? Any difference in type?
 A: I would say the same problems, but more severe. I mean, more numbness, more intense pain, greater stiffness.
* * *
 Q: When you're telling me about all of these symptoms, are you talking within one month? Six months? A year?
A: Coming out of wires.
 Q: You were in those about four months or something?
A: I think it was three.
(Katz Depo. at 85.)
Katzargues in her brief that her facts are analogous to this court's recent decision in Ruggeri v. Katz (1996), 116 Ohio App.3d 112,687 N.E.2d 1. We see no parallel, and our Ruggeri decision is consistent with the law that places constructive knowledge on the patient in medical malpractice cases.
Ruggeri's facts showed a patient, although suspicious of his doctor's malpractice, could not have known of the malpractice without the exploratory surgery. The patient's doctor removed eighteen feet of his small intestine, more than necessary for the treatment. It was this treatment that now caused the patient's medical condition. We held in that case mere suspicion was not enough to trigger the cognizable event. The event occurred when his suspicions were validated. His suspicions could only be validated through exploratory surgery, which constituted the patient's investigation of his problem.
Katz stated that her symptoms worsened after the 1985 surgery and before she left the care of Dr. Guyuron and that the shift of her jaw was noticeable to her. (Katz Depo. at 114, 117, 135.) Under the circumstances, a reasonable person would have been put on notice that further investigation was necessary at that time. Katz's physician-patient relationships with Drs. Fisher, Guyuron, and Resnick ended on May 29, 1987, May 23, 1988, and October 5, 1991, respectively. Any claims arising of the 1985 surgery should have been filed no later than one year after those dates. Because Katz did not file her complaint until January of 1997, over five years after the end of her physician-patient relationship with all of the defendants, her action is time-barred. Accordingly, we overrule her first assignment of error.
In her second assignment of error, Katz argues that material issues of fact existed as to her fraud claim. Ohio has recognized that a knowing misrepresentation of a material fact about a patient's condition may serve as the basis for a fraud action independent from a medical malpractice action if the patient justifiably relies upon the misrepresentation to his detriment and the physician's misstatement of the facts cannot be characterized as medical in nature. Gaines v. Preterm-Cleveland, Inc. (1987),33 Ohio St.3d 54, 56, 514 N.E.2d 709, 712-713.
In this case, Katz fails to set forth a misstatement by the defendants. Instead she alleges that the defendants failed to fully disclose her medical condition after the 1985 surgery. The Gaines court recognized that a physician has a duty to disclose to a patient a known material fact about the patient's medical condition. Id.at 56, 514 N.E.2d at 713, fn 1. However, where the matter allegedly concealed is integral to the alleged malpractice, a physician's non-disclosure does not independently extend the statute of limitations for malpractice. See Richards v. St. Thomas Hosp. Inc. (1986) 24 Ohio St.3d 27, 29, 492 N.E.2d 821, 824. The defendants' alleged failure to fully inform Katz of her condition following the 1985 surgery is inextricably related to her malpractice claim for injuries allegedly sustained as a result of that surgery. Accordingly, there exists no independent basis for Katz's fraud claim.
Even if we conclude that the defendants' failure to fully disclose Katz's condition constituted fraud, her claim is still time-barred. Under R.C. 2305.09(C), a fraud claim must be brought within four years after the cause of action accrues. Again, Katz argues that her cause of action did not accrue until her discussion with Dr. Monfort which alerted her to the concealment. Citing Gaines, she argues that the statute of limitations does not begin to run until the fraud is discovered.
However, Ohio courts have held that a cause of action for fraud accrues when the injured party is aware of facts sufficient to alert a reasonable person to the possibility of fraud. Palm Beach Co. v. Dun Bradstreet (1995), 106 Ohio App.3d 167, 171,665 N.E.2d 718, 720. (Citation omitted.) As set forth above, Katz stated in her deposition that, shortly after the 1985 surgery, she experienced a worsening of her pre-surgery symptoms. This knowledge was enough to alert a reasonable person that something was wrong and, therefore, triggered the running of the statute of limitations.
In her third assignment of error, Katz argues that the trial court erred in failing to consider the application and constitutionality of the statute of repose. In its journal entry, the trial concluded that it was not necessary for this Court to consider the application and the constitutionality of the statute of repose. (Journal entry of 4/5/99 at 3.)
In Hardy v. VerMeulen (1987), 32 Ohio St.3d 45, 47,512 N.E.2d 626, 628, certiorari denied (1988),484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993, the supreme court held that R.C. 2305.11(B) is unconstitutional as applied to bar medical malpractice claims by plaintiffs who did not know or could not reasonably have known of their injuries. However, as discussed in our evaluation of Katz's first and second assignments of error, the record reveals that Katz did, in fact, have knowledge of her injuries well before the expiration of the statute of limitations. As a result, the statute of repose is inapplicable to her case and the trial court did not err in failing to address its constitutionality. Katz's third assignment of error is overruled.
Finding no merit to any of Katz's assignments of error, we hereby affirm the decision of the trial court.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and JAMES M. PORTER, J., CONCUR.
 _______________________________ PATRICIA ANN BLACKMON, JUDGE