[Cite as *Myers v. Emergency Medicine Specialist, Inc.*, 2012-Ohio-4624.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| UVA E. MYERS, ET AL. | : | |
| | : | |
| Plaintiff-Appellants | : | Appellate Case No. 24918 |
| | : | |
| v. | : | Trial Court Case No. 09-CV-3125 |
| | : | |
| EMERGENCY MEDICINE SPECIALISTS, | : | (Civil Appeal from |
| INC., ET AL. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the ___5th___ day of ___October___, 2012.

. . . . . . . . . . .

SAM G. CARAS, Atty. Reg. #0016376, MITCHELL J. ANDERSON, Atty. Reg. #0086950, 130 W. Second Street, Suite 310, Dayton, Ohio 45402-1534
        Attorneys for Plaintiff-Appellants

KAREN L. CLOUSE, Atty. Reg. #0037294, JOHN B. WELCH, Atty. Reg. #0055337, 580 Lincoln Park Blvd., Suite 222, Dayton, Ohio 45429-3493
        Attorneys for Defendant-Appellees

. . . . . . . . . . . . .

RICE, V.J.

{¶ 1}   Appellants, Uva E. Myers, et al., appeal from the judgment of the Montgomery

County Court of Common Pleas entering summary judgment in favor of appellees, Emergency Medicine Specialists, Inc., et al. At issue is whether the trial court erred in concluding, as a matter of law, appellants failed to file their amended complaint naming additional defendants within the applicable statute of limitations period. For the reasons discussed in this opinion, we affirm the trial court's judgment.

{¶ 2} The record demonstrates that on November 8, 2007, Appellant Uva E. Myers ("Myers") was taken to the Kettering Medical Center Emergency Department after falling in her bathroom. Myers was assessed and X-rays were ordered by Defendant Matthew Kiefaber, M.D., a non-party to this appeal. After reviewing the film, Dr. Kiefaber concluded the knee showed no malalignment or dislocation. Dr. Kiefaber diagnosed Myers with a simple contusion, explained his conclusion to Myers, and discharged her to an extended care facility at 4:25 p.m. on the same day.

{¶ 3} Myers' X-rays were also reviewed by radiologist, Appellee Robert M. Lemming, M.D. In contrast to Dr. Kiefaber's interpretation, Dr. Lemming concluded Myers suffered an anterior dislocation of her femur as well as a displacement of her patella. Dr. Lemming's report was dictated at 3:54 p.m. on November 8, 2007 and signed electronically at 5:04 p.m. The findings were later included in Myers' permanent medical record. The emergency department, however, was not expressly notified of Dr. Lemming's conclusions.

{¶ 4} On November 9, 2007, Myers returned to the emergency room where her left foot was cold and ischemic. Given the lack of blood supply, Myers was later informed her left leg would require amputation below the knee. Dr. Kiefaber testified that, had he known of the knee dislocation, he would have discussed the injury with the orthopedics and the vascular surgery

departments because certain knee dislocations are known to be limb threatening.

{¶ 5}     During his deposition, Dr. Kiefaber testified that an emergency room physician at his hospital generally provides a preliminary reading of an X-ray.  After receipt of this initial interpretation, the radiology department reviews the films.  According to Dr. Kiefaber, if the radiologist finds an error in the preliminary interpretation, the radiologist will issue a discrepancy report that, in effect, notifies the emergency department of the different diagnosis.  Although Dr. Kiefaber's interpretation was noted in Myers' "Emergency Nursing Record," he stated that he did not note his interpretation in the hospital's computer system.  He further observed, however, he was not required to do so at the time of Myers' X-ray because the hospital had not completely transitioned to digital reporting.

{¶ 6}     Dr. Kiefaber further testified that, pursuant to hospital policy, even in the absence of a preliminary reading by an emergency room physician, a radiologist interpreting a film showing a significant injury is required to issue a report notifying the emergency department. Hence, given the nature of Myers' injury, Dr. Kiefaber asserted  Dr. Lemming's actions fell below the standard of care because he failed to notify the emergency department of his interpretation of Myers' X-ray.

{¶ 7}     During his deposition, Dr. Lemming testified that, at the time of Myers' X-ray, when an emergency department physician provides an initial interpretation of an X-ray, that interpretation was required to be noted in the hospital's computer system because that system was the base from which the radiology department worked in issuing its review of X-ray films.  Dr. Lemming also confirmed that, in Myers' case, there was no preliminary assessment in the computer accompanying Myers' X-ray materials.  Dr. Lemming also testified to his belief that, at

the time of Myers' X-ray, not all films required a preliminary report. As a result, Dr. Lemming indicated his reading was the only existing interpretation. And, with regard to the observable injury sustained by Myers, Dr. Lemming testified he did not consider the dislocation limb threatening because, in his experience, a knee dislocation is a common injury that, without more information, would not necessitate further reporting. In sum, Dr. Lemming maintained that because he was unaware of Dr. Kiefaber's erroneous initial interpretation and he did not consider the underlying knee dislocation a significant injury, he had no reason to file a discrepancy report or specifically notify the emergency department of his findings.

{¶ 8}    On approximately October 21, 2008, Dr. Kiefaber, Emergency Medicine Specialists, Inc., Kettering Medical Center, and appellees received "180-day letters" pursuant to R.C. 2305.113 notifying them that appellants were investigating the possibility of a medical malpractice suit against them. Approximately six months later, on April 17, 2009, appellants filed a complaint against Dr. Kiefaber, Emergency Medicine Specialists, Inc., and Kettering Medical Center. Appellees were not named in the suit. Over a year and one-half later, however, on January 10, 2011, appellants filed an amended complaint naming appellees as defendants in the case based upon Dr. Kiefaber's allegation that Dr. Lemming was negligent in failing to properly report his X-ray interpretations.

{¶ 9}    On May 25, 2011, appellees moved the trial court for summary judgment arguing the amended complaint, filed more than three years after the date of the injury and nearly two and one-half years after the service of the 180-day letters, was filed outside the applicable statute of limitations set forth in R.C. 2305.113. Appellees asserted the cognizable event triggering the accrual of appellants' cause of action was the amputation of Myers' leg, on or about November

15, 2007. According to appellees, appellants' decision to send Dr. Kiefaber as well as Dr. Lemming and his corporation 180-day letters vis-a_-vis the occurrence of Myers' leg amputation evidenced their acknowledgment of this accrual. By statute, appellees maintained appellants had 180 days from November 15, 2008, i.e., until April 21, 2009, to file their amended complaint. As they failed to file within the statutory timeframe, appellees concluded appellants were time-barred from asserting claims against them.

{¶ 10} Appellants filed a competing motion for summary judgment contesting appellees' assertion that the applicable statute of limitations had passed. Appellants argued the cognizable event for the accrual of their cause of action was Dr. Kiefaber's deposition because, only then did they discover the possibility that Dr. Lemming potentially violated hospital policies in failing to expressly notify the emergency department of his findings or file a discrepancy report relating to Myers' injuries. Appellants asserted that concluding otherwise would violate due process because, given the state of Myers' medical records, they could not have included Dr. Lemming in the original complaint and, at the same time, complied with Civ.R. 10(D), the rule requiring an affidavit of merit endorsed by a medical expert based upon Myers' medical records. Appellants maintained that it would be unreasonable to require them to base their case against Dr. Lemming on the existing medical records and, at the same time, assume, without confirmation, that his findings within those records were improperly processed.

{¶ 11} On November 3, 2011, the trial court issued its judgment sustaining appellees' motion for summary judgment and overruling appellants' motion. In so ruling, the trial court observed that, after the leg amputation, Myers consulted with an attorney who, in turn, sent a 180-days letter to all individuals involved with her care after her fall, but before her amputation,

including appellees. This, in the trial court's view, demonstrated Myers was on notice or should have been on notice of the need to pursue a malpractice case against those individuals. The court consequently determined that appellants' cause of action for medical malpractice accrued, *at the latest*, on October 21, 2008, the date the letters were sent. From that point, appellants had 18 months to file a suit (one year plus 180 days), i.e., April 21, 2010. The court therefore concluded that appellants' claims against appellees, filed in the amended complaint on January 10, 2011, were, as a matter of law, outside the statute of limitations. Appellants now appeal and assign the following error for this court's consideration:

{¶ 12} "The trial court erred in overruling plaintiffs' motion for summary judgment and/or by granting judgment to defendant radiologists based on the bar of the statute of limitations."

{¶ 13} Summary judgment shall not be granted unless there are no genuine issues of material fact and, after viewing the evidence in a light most favorable to the nonmoving party, the moving party is, on the record, entitled to judgment as a matter of law. Civ.R. 56. The moving party shoulders the burden of establishing factual issues for trial. *See e.g. Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). A trial court's entry of summary judgment is reviewed on appeal de novo. *See e.g. Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726 (2d Dist. 1998).

{¶ 14} R.C. 2305.113 provides, in relevant part:

> (A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

(B)(1) If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

{¶ 15} Further, the Ohio Supreme Court has observed:

{¶ 16} "[A] cause of action for medical malpractice accrues and the one year statute of limitation commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later." *Frysinger v. Leech*, 32 Ohio St.3d 38, 41-42, 512 N.E.2d 337 (1987).

{¶ 17} Under the discovery rule, a "cognizable event" triggers the running of the statutory time for bringing suit. A "cognizable event" is "some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." *Allenius v. Thomas*, 42 Ohio St.3d 131, 134, 538 N.E.2d 93 (1989). Hence, if a patient believes that her physician has done something that has caused her harm, such a fact is enough to alert her to the necessity for investigation for purposes of pursuing redress. *Id*.

{¶ 18} In *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284 (1992), the Ohio Supreme Court elaborated on the manner in which a cognizable event manifests. The court observed that "*constructive* knowledge of facts, rather than the *actual* knowledge of their significance, is enough to start the statute of limitations running under the discovery rule." *Id*. at

549. Consequently, the statute of limitations in a medical malpractice case will be triggered even if a potential plaintiff has not uncovered all relevant facts to constitute her cause of action to trigger the running of the statute of limitations. *Id.* Thus, "[t]he occurrence of a cognizable event makes it incumbent upon that individual to investigate his or her case completely." *Hans v. The Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 07AP-10, 2007-Ohio-3294, ¶11, citing *Simonds v. Kearney*, 9th Dist. Wayne No. 01CA0035, 2002-Ohio-761.

{¶ 19} Appellants contend that the trial court erred in granting summary judgment to appellees because, even though Dr. Lemming's report was included in Myers' medical record, they had no way of knowing his accurate reading of Myers' X-ray would implicate him in the malpractice case until Dr. Kiefaber, during his deposition, would claim Dr. Lemming was negligent for failing to notify him of Myers' knee dislocation. Appellants assert that, without Dr. Kiefaber's allegations, they were unable to comply with Civ.R. 10(D)'s requirement that an affidavit of merit provided by an expert witness be attached to the complaint. Specifically, they argue that prior to Dr. Kiefaber's deposition, they had no reason to believe Dr. Lemming potentially violated any reporting policies because his interpretation was, on its face, properly filed within Myers' medical records and represented an accurate diagnosis of Myers' injury. Because they had no way of knowing Dr. Lemming could be implicated in the suit until Dr. Kiefaber was deposed, they could not have met the requirements of Civ.R. 10(D) and their claim would have been subject to a Civ.R. 12(B) dismissal. Appellants maintain, therefore, that due process requires this court to reverse the trial court and find the cognizable event, with respect to the claim against Dr. Lemming, was Dr. Kiefaber's allegation of Dr. Lemming's negligence. In support, appellants rely upon the Ohio Supreme Court's decision in *Akers v. Alonzo*, 65 Ohio

St.3d 422, 605 N.E.2d 1 (1992).

{¶ 20} In *Akers*, the patient commenced treatment with a urologist, Dr. Alonzo. The doctor examined the patient and took several biopsies of her bladder eventually concluding the patient showed no signs of cancer. The patient was then referred to a second urologist, Dr. Wise, who reviewed prior pathology slides and determined the patient had cancer. Approximately four years later, the patient filed a medical malpractice action against Dr. Alonzo and an oncologist. The patient subsequently learned from his medical expert that a Dr. de Lamerens had originally misinterpreted the slides as showing no cancer. One year after filing the complaint, the patient filed a second complaint that included a claim against Dr. de Lamerens. The trial court granted summary judgment in Dr. de Lamerens' favor concluding the cause of action was time-barred. The court of appeals reversed the trial court's judgment, holding there was evidence from which reasonable minds could draw the conclusion that the patient had no basis for suspecting that he had been initially misdiagnosed by Dr. de Lamerens until his identity was discovered; to wit, after the first lawsuit was initiated and the patient's expert re-read the slides discovering the purported error.

{¶ 21} The Supreme Court subsequently affirmed the appellate court's reversal. The Court found its ruling in *Flowers* was distinguishable from the facts before it. In *Flowers*, the patient was aware that other individuals were involved in the faulty interpretation of her mammogram, but she was unaware of their identities. The patient discovered, nearly eight months later, she had cancer. That discovery was the cognizable event giving rise to a duty to determine the identity of the potential tortfeasors. In *Akers*, however, there was nothing in the record indicating that the patient knew or should have known that the pathology slides had been

wrongly read. The cognizable event was when the patient discovered, through his expert, that the pathology slides had been misinterpreted by Dr. de Lamerens. The Court underscored that

> [w]hile *Flowers, supra*, holds that the occurrence of the cognizable event imposes a duty of inquiry on the plaintiff, it does not hold that the plaintiff has a duty to ascertain the cognizable event itself, especially in a situation such as here, where the patient had no way of knowing either that there had been another physician involved or that that other physician had made an incorrect diagnosis. *Akers, supra*, at 425-426.

{¶ 22} We find the present matter distinguishable from the circumstances presented in *Akers*. Here, appellants were actually aware that Dr. Lemming had reviewed Myers' X-rays and appellants do not dispute that Myers' records included a copy of Dr. Lemming's report. In fact, appellants sent Dr. Lemming a 180-day letter placing him on notice that they were investigating a potential malpractice claim to which he may be a party. Unlike the records in *Akers* that lacked any indication that a previously unknown doctor had been involved with the misreading of the pathology slides, all medical records were available to appellants and all individuals involved in her treatment were apparent from the face of the records. Furthermore, and perhaps most significantly, there is no indication that Dr. Lemming specifically contacted the emergency department in light of his findings. Even though Dr. Lemming's accurate report appears in the medical records, the catastrophic nature of the eventual amputation would prompt a reasonable person to inquire into why, if an accurate reading existed, hospital personnel did not contact Myers and re-admit her. Pursuing this course of inquiry would have created a question regarding

the propriety and reasonableness of Dr. Lemming's reporting procedure.

{¶ 23} The foregoing analysis is consistent with the past precedent of this court. In *Kaplun v. Brenner*, 2d Dist. Montgomery No. 17791, 2000 WL 234707 (Mar. 3, 2000), Dr. Brenner arranged for the patient to have a mammogram in December of 1995. Dr. Frost, a radiologist, interpreted the mammogram as showing no indications of cancer. Later, Dr. Brenner noted a lump in the patient's breast during an annual visit, but assured her it was not cancerous. In December 1996, the patient had a second mammogram after which Dr. Brenner advised her to see a surgeon about the lump. Later the same month, Dr. Schmidt performed a biopsy and diagnosed the patient with breast cancer which necessitated a mastectomy. After the surgery, the patient discovered that Dr. Frost had recommended in his initial report that she have a follow-up mammogram six months after her 1995 visit. The patient ultimately filed a complaint for malpractice against Dr. Brenner in January of 1998; in September of 1998, the patient filed an amended complaint asserting a malpractice against Dr. Frost relating to his 1995 reading of the original mammogram. The trial court entered summary judgment in the defendants' favor, finding the cognizable event was the December 1996 diagnosis. Thus, the claims were time-barred because they were filed beyond the one-year statute of limitations period.

{¶ 24} On appeal, the patient argued the trial court erred in finding the 1996 diagnosis the cognizable event. Instead, she argued she only questioned the care rendered by Dr. Frost after two other doctors expressed concern about the treatment she received. Further, the patient argued, relying on *Akers, supra*, the cognizable event relating to Dr. Frost's involvement occurred in 1998, when her attorney's independent expert reviewed the 1995 mammogram films and opined that Dr. Frost may have misread them. This court disagreed.

**{¶ 25}** With respect to Dr. Brenner, in 1995, Dr. Brenner discovered the lump in the patient's breast and diagnosed her with noncancerous fibroscytic breast disease. In 1996, the same lump was determined cancerous. This court consequently concluded that these facts should have lead the patient to believe Dr. Brenner's initial diagnosis was incorrect, or should have placed her on notice that she needed to pursue possible legal remedies.

**{¶ 26}** With respect to Dr. Frost, this court, relying on *Flowers*, determined the cognizable event was the patient's cancer diagnosis. At that point, this court observed the patient had a duty to ascertain the identity of the radiologist who read her 1995 mammogram and to determine whether he may have misread the films. This court further rejected the patient's reliance in *Akers, supra*, pointing out that, unlike in *Akers*, the patient knew someone other than Dr. Brenner had read her 1995 mammogram and forwarded the report to Dr. Brenner so he could inform her of the results.

**{¶ 27}** This case is similar to *Kaplun* in that appellants knew Dr. Lemming was involved in her care and knew he had accurately found she had a dislocated knee. And, after the amputation, appellants could be charged with constructive knowledge that Dr. Lemming did not specifically report his findings to the emergency department. This information was sufficient to impose a duty upon appellants to ascertain whether, through the reporting protocol he followed, Dr. Lemming committed malpractice.

**{¶ 28}** We acknowledge that appellants in this case could not divine that Dr. Kiefaber would implicate Dr. Lemming in the suit. Appellants' inability to predict Dr. Kiefaber's negligence allegation, however, is immaterial to the cognizable event analysis. It is undisputed that Dr. Lemming's accurate diagnosis of Myers' knee dislocation was placed in Myers'

permanent record. Simply because Dr. Lemming's accurate reading was in Myers' medical file does not imply and, in fact, weighs against the conclusion that the emergency department or Dr. Kiefaber were specifically notified of that reading.

{¶ 29} Appellants were aware of Dr. Lemming, his involvement, his interpretation, as well as Dr. Kiefaber's erroneous interpretation. They consequently had actual knowledge of Dr. Lemming's actions and had constructive knowledge of his potential inactions. Given these points, appellants could have, prior to the expiration of the statute of limitations, filed a malpractice action against Dr. Lemming and met the requirements of Civ.R. 10(D) by obtaining an extension, per the rule, in an effort to obtain facts necessary to support an affidavit of merit to support their allegations. We therefore conclude appellants were obligated, pursuant to *Flowers*, to determine whether Dr. Lemming's involvement in Myers' care was sufficient to implicate him in the malpractice suit. And appellants had the mechanisms available to file a legally sufficient complaint within the statutory period.

{¶ 30} Given these points, we hold that the cognizable event triggering the running of the statute of limitations in this case was Myers' leg amputation. The amputation was the "noteworthy event" that alerted or should have alerted appellants that an improper diagnosis was issued by Dr. Kiefaber. Appellants were therefore on notice, after the amputation, to investigate the facts and circumstances of the malpractice claim in order to pursue their remedies against all potentially liable individuals who participated in her care, including appellees.

{¶ 31} One final point deserves attention. Appellants assert that the issuance of a 180-day letter cannot always serve as the latest date at which a cause of action for medical malpractice could accrue. Appellants contend, however, that this court's holding in *Brown by*

*and Through Poulton-Callahan v. Good Samaritan Hospital and Health Care Ctr.*, 2d Dist. Montgomery No. 15959, 1997 WL 165431 (Mar. 21, 1997), could be construed as a support for such a principle.   We do not agree.

{¶ 32}   In *Brown*, this court cited a case from a sister district which, on the facts of those cases, held that sending a letter to a particular party was sufficient to establish the latest accrual date, as a matter of law.   *Brown*, therefore, does not represent a blanket statement that, in every case, the issuance of the 180-day letter represents the latest date for the statute of limitations to begin running.   Appellant's assertion regarding *Brown's* statement of a medical malpractice accrual date lacks merit.

{¶ 33}   In this case, the trial court did rule that the 180-day letter was "an acknowledgment by [appellants] that a 'cognizable event' had occurred."   And, as a result, the court determined the date of the letter, i.e., October 21, 2008, was the very latest date the statute on her claims began to run.   Although the trial court did not expressly find the amputation to be the cognizable event, its judgment does not preclude this finding.   We therefore hold the trial court did not err in concluding appellant's cause of action against appellees is time-barred by operation of R.C. 2305.113 as a matter of law.

{¶ 34}   Appellants' sole assignment of error lacks merit.

{¶ 35}   For the reasons discussed above, the judgment of the Montgomery County Court of Common Pleas is hereby affirmed.

. . . . . . . . . . . .

FAIN, J., concurs.
FROELICH, J., concurs in judgment only.

[Cite as *Myers v. Emergency Medicine Specialist, Inc.*, 2012-Ohio-4624.]
(Hon. Cynthia Westcott Rice, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).


Copies mailed to:

Sam G. Caras
Mitchell J. Anderson
Karen L. Clouse
John B. Welch
Neil Freund
John Haviland
Dale Goldberg
Lisa Pavlik
Robert Byrne
Hon. Frances E. McGee