NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0133n.06

No. 14-1504

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| ESTATE OF LUQMAN A. ABDULLAH, by its personal representative Mujahid Carswell, <br>　　Plaintiff-Appellant, <br><br> v. <br><br> ANDREW G ARENA; GEORGE NIKOLOPOLOUS; UNIDENTIFIED FBI AGENT NO. 1; UNIDENTIFIED FBI AGENT NO. 2; UNIDENTIFIED FBI AGENT NO. 3; UNIDENTIFIED FBI AGENT NO. 4, <br><br>　　Defendants-Appellees. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**FILED**
Feb 13, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    NORRIS, ROGERS, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.  This case is about whether a *Bivens* action for wrongful death was timely filed within the three-year statute of limitations.  On October 28, 2009, Luqman Abdullah was shot and killed by FBI agents during a sting operation intended to apprehend Abdullah and several co-conspirators.  According to an FBI press release issued the day of the shooting, Abdullah had resisted arrest by firing on FBI agents.  Suspicious of the FBI's account, Abdullah's friends, relatives, and political representatives called for an investigation into the circumstances of the shooting.  Federal and state investigations followed and within a year of Abdullah's death, reports concluding the shooting was justified were issued by the United States Department of Justice and the Michigan Attorney General.  Nearly three years after the shooting,

Abdullah's Estate spoke to Muhammad Salaam, a co-conspirator who claimed that Abdullah did not have a gun and never fired on the agents. Abdullah's Estate filed a *Bivens* action against unidentified FBI agents the following day, barely within three years of the shooting. Six months later, in April 2013, the Estate amended the complaint to name two FBI supervisors, Andrew Arena and George Nikolopoulos,[1] along with four unidentified FBI agents revealed in the investigative reports to have been the shooters. The district court dismissed the *Bivens* action as time-barred.[2]

On appeal, the Estate argues that the claims against Arena and Nikolopoulos were timely, arguing in the alternative that (1) the claims did not accrue until the Estate learned or had the ability to learn Abdullah's death was wrongful; (2) the statute of limitations was tolled because the defendants fraudulently concealed the claim by lying about Abdullah resisting arrest; and (3) the amended complaint relates back to the original complaint under Fed. R. Civ. P. 15 because the Estate made a mistake about the identities of the parties. The Estate also argues that the district court improperly dismissed the complaint *sua sponte*, in violation of the prerequisites for *sua sponte* dismissal established by *Tingler v. Marshall*, 716 F.3d 1109 (6th Cir. 1983). Each of these arguments fails.

On October 28, 2009, FBI agents raided a warehouse in Dearborn, Michigan to arrest Luqman Abdullah and four co-conspirators in connection with a conspiracy to receive and sell stolen property. Abdullah's Estate alleges that Abdullah was unarmed and had surrendered by lying on the ground, but that FBI agents deployed an FBI dog, which attacked Abdullah. When

---

[1] Arena was the special agent in charge of the Detroit Division and Nikolopoulos was the team leader of the FBI-Detroit SWAT team.

[2] The Estate argued in the district court that it was entitled to equitable tolling of the statute of limitations because the identities of the four shooters were fraudulently concealed. The district court disagreed, finding that because the Estate knew of its cause of action in October 2009, it had ample time and a number of methods to learn the agents' identities. *See Smith v. City of Akron*, 476 Fed. App'x. 67, 69 (6th Cir. 2012) ("Because [Plaintiff] waited until the last day of the . . . limitations period to file his complaint [against unidentified defendants], that left no time to discover the identity of his arresting officers within the relevant time.") The Estate does not appeal this decision.

Abdullah attempted to fight off the dog, four FBI agents shot Abdullah a combined 20 times, killing him. The four co-conspirators, including Muhammad Salaam, surrendered and were arrested.

Later that day, the Detroit Division of the FBI issued a press release stating that Abdullah had fired on the FBI agents and was shot as a result:

> [d]uring the arrests today, the suspects were ordered to surrender. At one location, four suspects surrendered and were arrested without incident. Luqman Ameen Abdullah did not surrender and fired his weapon. An exchange of gun fire followed and Abdullah was killed. An FBI canine was also killed during the exchange.

Dissatisfied with the FBI's account, Abdullah's family filed numerous public records requests and pressed federal and state authorities to investigate the shooting. The public records requests were all denied, but two FOIA lawsuits against state agencies produced evidence relating to Abdullah's death: a January 31, 2011 settlement with the Michigan State Police yielded "video footage and other documents concerning the death of Abdullah," and a June 14, 2011 settlement with the City of Dearborn yielded "over one thousand pages of documents, including photographs, video footage, police camera footage and audio concerning the death of Abdullah." Within a year of the shooting, both the Michigan Attorney General and the Civil Rights Division of the United States Department of Justice publicly released incident reports reviewing evidence and concluding that the shooting was justified.

On October 25, 2012—nearly three years after the shooting—Muhammad Salaam[3] signed an affidavit stating that Abdullah had surrendered to the FBI agents and never drew or shot a gun at the agents.

---

[3] Salaam pleaded guilty to conspiracy to commit federal crimes and felon in possession of a firearm on October 18, 2010. He was sentenced to 27 months' imprisonment. According to the Bureau of Prison's website, Salaam was released from prison on October 14, 2011.

The next day, on October 26, Abdullah's Estate filed a *Bivens* action in the Eastern District of Michigan against "Unidentified FBI Agents, in their individual capacities; jointly and severally." The agents were described as "employed by the [FBI]" and "involved in the tactical operation that resulted in the shooting death of Abdullah." The complaint was served on the United States Attorney's Office in Detroit, the United States Attorney General's office in Washington, DC, and FBI headquarters in Washington, DC. No individual agent was personally served. No defendants responded to the suit and a default judgment was entered.

After the Estate withdrew the default judgment, the district court ordered "the government" to file an appearance of counsel and an answer to the complaint. An Assistant United States Attorney filed an entry of appearance "as counsel on behalf of the United States of America, an interested party in the above entitled action." The United States observed that the complaint named no real defendants and that the statute of limitations had expired, and accordingly "suggested" dismissal of the complaint.

Following the United States's suggestion, the district court ordered the Estate to show cause why the complaint should not be dismissed as time-barred. Two days later, on April 18, 2013, the Estate filed an amended complaint, naming Andrew Arena and George Nikolopoulos, in their individual capacities, as well as four defendants who had shot at Abdullah, named as "Unidentified FBI Agent No. 1, [FBI] Hostage Team Leader"; "Unidentified FBI Agent No. 2, [FBI] Hostage Rescue Team K-9 Handler"; "Unidentified FBI Agent No. 3, [FBI] Hostage Rescue Team K-9 Cover"; "Unidentified FBI Agent No. 4, [FBI] Hostage Rescue Team, Special Weapons and Tactics Team Special Agent." In its amended complaint, the Estate pled that the FBI had fraudulently concealed the existence of a cause of action from the Estate by lying about

whether Abdullah fired on FBI agents and concealing the identities of the FBI agents involved in the operation.

Arena and Nikolopoulos filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing that the amended complaint was filed outside the three-year statute of limitations, that neither the facts surrounding a widely-publicized shooting nor their identities had been fraudulently concealed, and that the amended complaint did not relate back to the timely-filed original complaint. No one appeared on behalf of the four unidentified FBI agents.

The district court dismissed the entire case with prejudice. The district court found that the claim accrued on October 29, 2009, the day after the FBI issued the press release about the shooting. The press release stated that Abdullah had been killed by FBI agents in an exchange of gunfire. Documents accompanying the press release identified Abdullah's alleged co-conspirators, including four who were witnesses to the shooting and thus potential sources of an alternative account of Abdullah's death. According to the district court, these facts put the Estate on notice of a possible claim and triggered the running of the statute of limitations. Because the statute of limitations for a *Bivens* action in Michigan was three years, and the amended complaint was not filed until three-and-a-half years after the claim accrued, the action was time-barred.

Next, the district court concluded that the Estate was not entitled to tolling based on fraudulent concealment because the press release revealed—not concealed—a possible cause of action against the shooters. The court noted that the shooting was "well-publicized and much criticized" and that the Estate's filings did not indicate whether the Estate was diligent in contacting eyewitnesses before it interviewed Salaam on October 25, 2012. In response to the Estate's argument that the defendants lied about Abdullah's having a gun, the district court stated

that such exculpatory stories are present in "virtually every case," and that exculpatory stories were not fraudulent concealment under Michigan law.

The district court also concluded that the amended complaint did not relate back to the original complaint. Although the original complaint was filed within the statute of limitations, it named John Doe defendants only. The district court concluded that the substitution of real defendants in place of John Doe defendants could not relate back under *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

In response to the Estate's argument that a *sua sponte* dismissal of the case would be contrary to *Tingler v. Marshall*, 716 F.3d 1109 (6th Cir. 1983) and *Morrison v. Tomano*, 755 F.2d 515 (6th Cir. 1985), the court concluded that the dismissal substantially met the *Tingler* requirements because the court had issued an Order to Show Cause, the Estate had submitted multiple briefs concerning dismissal, and the court had issued a reasoned decision dismissing the case on procedural grounds. The Estate appeals.

Abdullah's claims accrued the day he was killed: October 28, 2009. Under the discovery rule, *Bivens* claims accrue when the plaintiff "knew or should have known of the injury which is the basis of his *Bivens* claim." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991). Once the plaintiff knows "he has been hurt and who has inflicted the injury," the claim accrues. *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Because this information was disclosed in an FBI press release issued the day of the shooting, Abdullah's Estate knew that Abdullah had been injured and that FBI agents had caused the injury. Abdullah's Estate also knew the identities of the co-conspirator eyewitnesses. This knowledge started the clock, rendering the Estate responsible for determining within the limitations period whether the injury was a *Bivens* violation.

The Estate urges the court to find a later accrual date, on the theory that the Estate could not or did not learn until later that Abdullah's death was wrongful and in violation of his constitutional rights. The Supreme Court has rejected that theory of claim accrual in the context of "medical malpractice, where the cry for a discovery rule is loudest." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.* So long as the plaintiff knows he has been injured and who has caused the injury, he has the ability to investigate the remaining elements of his cause of action and prosecute the claim. *Id.* at 555–56. Abdullah's Estate knew those facts on October 28, 2009. This is not a case where the identity of the defendants and at least the possibility that the shooting was wrongful were not known. The Estate delayed in interviewing eyewitnesses for nearly three years, but that does not delay the accrual of the claim.

An October 28, 2009 accrual date renders the amended complaint untimely—unless tolling applies or the amended complaint relates back—because the amended complaint was filed more than three years after the claim accrued. Three years is the applicable limitations period for personal injury actions in Michigan and hence for *Bivens* actions. *See Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005). While federal law governs *Bivens* claim accrual, courts adopt the state statute of limitations and tolling provisions unless they are inconsistent with federal law or policy. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012); *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005).

The Estate is not entitled to tolling based on fraudulent concealment because the Estate did not plead wrongful concealment by Arena and Nikolopoulos. Fraudulent concealment has three elements: (1) wrongful concealment, i.e. a fraudulent act or statement by the defendant intended to conceal the existence of a cause of action from the plaintiff; (2) lack of knowledge of

the cause of action by the plaintiff; and (3) due diligence by the plaintiff. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013); *see also* Mich. Comp. Laws § 600.5855. The only basis for wrongful concealment argued by the Estate on appeal is "dishonest accounts of the shooting."[4] The Estate did not plead any statements by Nikolopoulos, dishonest or otherwise. And the statement the Estate attributes to Arena is not wrongful concealment.

Because the Estate did not plead any fraudulent statement by Nikolopoulos in the amended complaint, the Estate has not pled fraudulent concealment by Nikolopoulos with particularity.[5] Fraudulent concealment must be pled with particularity, *see* Fed. R. Civ. P. 9(b); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 447 (6th Cir. 2012), meaning that "[t]he acts or misrepresentations constituting fraudulent concealment of a claim must be pled in the complaint." *Tonegatto v. Budak*, 316 N.W.2d 262, 266 (Mich. Ct. App. 1982). Only a defendant's personal activities can trigger the fraudulent concealment tolling doctrine. *See Smith v. Sinai Hospital*, 394 N.W.2d 82, 87–88 (Mich. App. 1986). Furthermore, an affirmative act or misrepresentation by the defendant is required; "mere silence on the part of the defendant is not enough." *Draws v. Levin*, 52 N.W.2d 180, 183 (Mich. 1952). There are no statements by Nikolopoulos—fraudulent or otherwise—pled in the amended complaint, therefore the Estate failed to plead fraudulent concealment by Nikolopoulos.

The Estate also failed to plead wrongful concealment by Arena. The only statement pled in the amended complaint expressly attributed to Arena was a vague denial of wrongdoing from

---

[4] Two other bases for fraudulent concealment were pled in the amended complaint, but not argued in the appellate briefing: (1) concealment of the identities of the shooters via redaction of the publicly released reports; and (2) removal by the FBI of evidence and witnesses from the crime scene and subsequently withholding evidence and witnesses from local investigators. Because these bases were not argued, they were forfeited and we do not address them.

[5] The Estate argues that Arena did not contest the sufficiency of the pleading of fraudulent concealment in the district court, and thus Arena cannot contest it on appeal. But Arena and Nikolopoulos did contest the sufficiency of the pleading in the district court.

an October 2010 documentary about the shooting. Such a skeletal denial is equivalent to mere silence and is not wrongful concealment. As the Ninth Circuit has reasoned, "a denial of an accusation of wrongdoing (where such an answer was in practical effect no more than a failure to disclose the existence of a cause of action) [is] not a 'fraudulent concealment.'" *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 209 n.10 (9th Cir. 1950); *see also Lemson v. Gen. Motors Corp.*, 238 N.W.2d 414, 416 (1975); *Tebo v. Desai*, No. 212379, 2000 WL 33391101, at *2 (Mich. Ct. App. Dec. 15, 2000).

The only other statement pled with particularity in the amended complaint is from the FBI-Detroit Division press release issued on the day of the shooting. The press release stated that "Abdullah did not surrender and fired his weapon. An exchange of gun fire followed and Abdullah was killed." This is not a statement 'by the defendant': the press release was issued by the FBI-Detroit Division, not Arena or Nikolopoulos. The Estate, in the amended complaint, did not allege that the press release was issued at Arena's behest. And the level of Arena's involvement matters because fraudulent concealment requires "an *affirmative* act or misrepresentation"; silence or passivity is not enough. *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004) (emphasis added). With an accrual date of October 28, 2009 and no tolling, the Estate's amended complaint is timely only if it relates back to the timely-filed original complaint.

The Estate's Amended Complaint also does not relate back under Fed. R. Civ. P. 15(c)(1)(C). Examining the original complaint from the perspective of Arena and Nikolopoulos, neither defendant knew or should have known that they were targets of the lawsuit and would have been named but for a mistake concerning the proper parties' identities. In *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), the Supreme Court instructed courts in Fed. R. Civ. P.

15(c) cases to ask "what the prospective *defendant* knew or should have known during the Rule 4(m) period [for service of process]." 560 U.S. at 548. There is no evidence in the record that Arena or Nikolopoulos knew they were targets of the lawsuit when the original complaint was filed. Nor should Arena or Nikolopoulos have known they were targets of the lawsuit. If Arena and Nikolopoulos had read the original complaint, they would have likely concluded they were not targets of the lawsuit. First, their identities and roles in Abdullah's death had been made public long before the complaint was filed, rendering it unlikely they were among the "Unknown FBI Agents" named as defendants in the complaint. Second, the allegations in the complaint focus on the actual shooters. Third, the complaint lacked any allegations that would have made Arena and Nikolopoulos liable as supervisors; in individual-capacity *Bivens* claims, supervisors are liable for unconstitutional acts of subordinates only if they personally participate in the wrongdoing. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Finally, the district court's dismissal of the Estate's complaint did not violate the rules for *sua sponte* dismissal established by *Tingler v. Marshall*, 716 F.3d 1109 (6th Cir. 1983). *Tingler* does not apply to the dismissal of the claims against Arena and Nikolopoulos because the dismissal was not *sua sponte*; Arena and Nikolopoulos filed a motion to dismiss, which the district court granted. In its opening brief, the Estate argued that the US Attorney's Office could not represent Arena and Nikolopoulos, therefore the USAO's motion to dismiss was not properly submitted and the district court's dismissal was thus *sua sponte*. But it abandoned the argument that the USAO could not represent Arena and Nikolopoulos in its reply brief.

The dismissal of the claims against the four unidentified FBI agents was *sua sponte*. However, at oral argument, counsel for plaintiff agreed that the amended complaint with respect to the four unidentified FBI agents is not before the court on this appeal. In any event, the

dismissal did not violate *Tingler*. In *Tingler v. Marshall*, the Sixth Circuit held that before dismissing a case *sua sponte*, a district court must "(1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal; (4) give the defendant a chance to respond or file an answer or motions; and (5) if the claim is dismissed, state its reasons for the dismissal." 716 F.2d 1109, 1112 (6th Cir. 1983). In dismissals for failure to state a claim, the Sixth Circuit has held that it is not necessary to allow service of every defendant or give every defendant an opportunity to respond to the complaint. *See Morrison v. Tomano*, 755 F.2d 515, 516 (6th Cir. 1985). Arena and Nikolopoulos (1) were served. The district court (2) gave notice of its intent to dismiss the claims with its show cause order. The Estate (3) filed an amended complaint, responses to the show cause order, and a motion opposing dismissal. Arena and Nikolopoulos (4) responded to the Estate's motions. And the district court (5) entered a lengthy opinion and order dismissing the claims. The Estate's argument that it did not have notice of the district court's intent to dismiss the claims is belied by its multiple filings opposing dismissal.

For the foregoing reasons, we AFFIRM the judgment of the district court.