NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0503n.06

No. 15-3797

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 25, 2016
DEBORAH S. HUNT, Clerk

JOHN C. RUIZ-BUENO, III, et al.,               )
                                          )
     Plaintiffs-Appellants,               )
                                          )
v.               )               ON APPEAL FROM THE UNITED
                                          )               STATES DISTRICT COURT FOR THE
MAXIM HEALTHCARE SERVICES, INC.,               )               SOUTHERN DISTRICT OF OHIO
et al.,               )
                                          )
     Defendants-Appellees.               )
                                          )

BEFORE:    DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. On September 4, 2011, Edward Peterson, a pretrial detainee, died while he was being held at a Franklin County, Ohio, jail. On December 8, 2014, the plaintiffs, the administrator of Peterson's estate and Peterson's son, filed a 42 U.S.C. § 1983 action against the defendants, various medical-care providers employed by the Franklin County Sheriff's Office, alleging state-law claims of wrongful death, survivorship, and loss of consortium, as well as violations of the Eighth and Fourteenth Amendments. The district court dismissed the plaintiffs' lawsuit, concluding that the plaintiffs' claims were barred by the applicable two-year statutes of limitations and that the plaintiffs were not entitled to equitable tolling. The plaintiffs now appeal the district court's dismissal of their lawsuit, arguing that the district court used the incorrect accrual date in calculating whether the limitations period had run and, in the alternative, that the plaintiffs were entitled to equitable tolling. We affirm the

- 1 -

judgment of the district court, concluding that, at the latest, the plaintiffs knew or had reason to know of their claim when they sued a different set of defendants more than two years earlier, in 2012. We also find, as did the district court, that there is no basis for equitable tolling in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

After Peterson was arrested on a misdemeanor charge on August 5, 2011, he was held as a pretrial detainee at the Franklin County jail, which is operated by the Franklin County Sheriff's Office. At the time of his arrest, Peterson suffered from mental and physical illnesses, including bipolar disorder, schizoaffective disorder, and congestive heart failure. Although Peterson, before his incarceration, had been taking medication for his heart condition, he did not receive any heart medication while he was at the Franklin County jail. On September 4, 2011, Peterson died in jail from an excess of edema fluid caused by congestive heart failure.[1] On April 6, 2012, the Sheriff's Office released a redacted copy of an investigative-report into Peterson's death, which stated that Peterson's "immediate cause of death according to the coroner's report was an enlarged heart" and concluded that "[t]he response to the medical emergency by medical staff and [Franklin County Sherriff's Office] deputies/supervisors was not consistent with the Regulations, Polices and/or Procedures of the Franklin County Sheriff's Office." The report discussed Peterson's medical symptoms and care leading up to his death and identified, by name, five of the six nurses that the plaintiffs sued in this action.

On September 4, 2012, the plaintiffs filed a 42 U.S.C. § 1983 lawsuit against 53 deputies at the Sheriff's Office, alleging Eighth-Amendment violations and negligent provision of medical care, wrongful death, and loss of consortium under Ohio Law (the 2012 Action). In the

---

[1] The factual circumstances concerning Peterson's death are fully set forth in *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 355-57 (6th Cir. 2016).

summer of 2013, through discovery in the 2012 Action, the plaintiffs received an unredacted copy of the investigative report and Peterson's jail medical-file, which, according to the plaintiffs, revealed the identities of the defendants in this lawsuit. They also learned through a deposition in December 2013 that a social worker at the jail, Douglas Hahn, had requested medical treatment for Peterson in the days immediately preceding Peterson's death. On October 16, 2014, the district court awarded summary judgment to the defendants in the 2012 Action, which the plaintiffs appealed on November 18, 2014.[2]

On December 8, 2014, the plaintiffs filed a second lawsuit (the 2014 Action), which is the subject of this appeal. This time, the plaintiffs sued a different set of defendants, all of whom the plaintiffs allege were responsible for providing medical care to Peterson while he was in jail: Maxim HealthCare Services, a private medical care provider employed by Franklin County to provide medical care to Franklin County inmates, and seven of Maxim's nurses (Nurses Maria Sylvestri, Mary Compton, Brian Bumgardner, Damian Snead, Adam Houston, Gary Hall, and Tara Tallarico); Twin Valley Behavioral HealthCare, a private medical care provider employed by Franklin County to provide mental health services to Franklin County inmates, and two of Twin Valley's doctors (Drs. Delaney Smith and Adam Wooten); and Dr. John Tilley, a privately practicing doctor employed by Franklin County to provide mental health treatment to Franklin County inmates, and Dr. Tilley's professional corporation, Behavioral Science Specialists, LLC. The plaintiffs also included ten "Jane Doe" defendants in the lawsuit.

In the 2014 Action, the plaintiffs again sued under 42 U.S.C. § 1983, bringing Eighth-Amendment and Fourteenth-Amendment claims for violations of Peterson's right to adequate medical care and three state-law claims for wrongful death, survivorship, and loss of consortium.

---

[2] We affirmed the district court's grant of summary judgment in the 2012 Action on February 2, 2016. *Ruiz-Bueno*, 639 F. App'x 354.

The defendants moved to dismiss the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the plaintiffs' suit was barred by the applicable two-year statute of limitations. The district court agreed and granted the motion to dismiss, concluding that the plaintiffs "knew of and understood Peterson's injury on September 4, 2012, when they filed a lawsuit for failure to provide adequate medical care," that their lawsuit accordingly was time-barred, and that the plaintiffs were not entitled to equitable tolling. The plaintiffs now appeal, challenging those decisions.

## DISCUSSION

We review the district court's ruling on a Rule 12(b)(6) motion to dismiss *de novo*. *In re NM Holdings Co.*, 622 F.3d 613, 618 (6th Cir. 2010). In reviewing the Rule 12(b)(6) motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the allegations plausibly state a claim for relief. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Although "[t]he statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim," when "the allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). The district court's dismissal of an action on the grounds that the plaintiffs' complaint was filed outside the applicable statute of limitations is subject to a *de novo* standard of review. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *see also Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir. 1999).

## 42 U.S.C. § 1983 claim

The parties agree that the limitations period for the § 1983 claim is two years. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (*en banc*). What they dispute is the date on which the limitations period began to run. Although the limitations period is set by state law, the accrual date of the limitations period—that is, the date that the limitations period was triggered—is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).

"[U]nder federal law, as developed in this Circuit, the statute-of-limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (internal quotation marks and citations omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273; *see also Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997). "In determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003); *see also D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014).

The plaintiffs argue that their cause of action did not accrue until they knew that they "ha[d] been hurt *and* who … inflicted the injury" and that their claims accordingly were timely because they did not learn the identity of the defendants in the 2014 Action until they received the jail medical-file in the summer of 2013. *See Estate of Abdullah v. Arena*, 601 F. App'x 389, 393 (6th Cir. 2015) (emphasis added) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). However, our precedent provides that "[t]he statute of limitations commences to run

when the plaintiff knows or has reason to know of the *injury* which is the basis of his action." *Sevier*, 742 F.2d at 273 (emphasis added). "[D]iscovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (emphasis added); *see also Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001) ("The statute of limitations is not tolled while a plaintiff attempts to identify the correct defendants.").

The defendants offer, in total, five events that should have alerted the plaintiffs to their injury: (1) Peterson's unexpected death in jail on September 4, 2011; (2) Peterson's autopsy report, which was issued by the Franklin County Coroner's Office in October 2011, and which indicated that Peterson died from complications due to heart failure; (3) a televised news-story that reported on the Sheriff's investigation into the circumstances surrounding Peterson's death, which aired in the spring or summer of 2012; (4) the Sheriff's internal-affairs investigative-report into the circumstances of Peterson's death, a redacted copy of which was released on April 6, 2012; and (5) the date that the plaintiffs sued the Sheriff's deputies for Peterson's inadequate medical-care while he was in jail, September 4, 2012.

In our view, the release of the internal investigative report in April 2012 triggered the limitations period. The plaintiffs themselves acknowledged that they "became aware of [] wrongdoing . . . in Spring 2012 when the [Franklin County Sheriff's Office] published the redacted [internal-affairs investigative] report."[3] The redacted report discussed deficiencies at the jail, referenced medical-care professionals at the jail, and noted that Peterson died because of medical reasons (an enlarged heart). The report, for example, stated that Peterson had "bruising

---

[3] In their opening brief, the plaintiffs stated, "The first moment that anyone realized that Mr. Peterson's passing had anything to do with misconduct was in the spring/summer of 2012, when a news reporting station televised a story about Mr. Peterson and referenced an internal investigation that had been done by the [Franklin County Sheriff's Office]." Because the release of the report shortly followed the airing of the television story, the statute-of-limitations calculation is basically the same for both events.

on his upper left arm" and "swelling to his feet with blistering on his right foot," referenced "medical staff" and Peterson's "medical file," and disclosed the ineffective "code blue medical" response that Peterson received. Even though the report was redacted, it named five of the six nurses that the plaintiffs sued in this action. The plaintiffs object that these references "indicated no involvement with Mr. Peterson whatsoever." Although the references to the nurses' interactions with Peterson were sparse, they should have alerted the plaintiffs to the involvement of medical-care professionals in Peterson's care at the jail.

The plaintiffs complain that they "had absolutely no idea, and no information concerning Peterson's injury as it related to medical care," that the investigative report "was targeted exclusively at the misconduct of [the Franklin County jail] deputies," and that the report "mentioned little to nothing about medical personnel, and certainly did not contain any information about what type of medical services were being provided to Mr. Peterson, let alone the identities of the medical providers such as [the defendants]." In particular, the plaintiffs argue that they "did not know that [the Franklin County jail] contracted out its medical services, let alone who those companies were." These objections fail. The relevant inquiry is when the plaintiffs, *through the exercise of reasonable diligence*, should have discovered the injury. *Sevier*, 742 F.2d at 273. Even though the report did not provide details as to the defendants' interactions with Peterson, the report should have alerted the plaintiffs as to their claim of inadequate medical-care. The report disclosed, for example, that Peterson had more than 30 pounds of edema fluid at the time of his death and that he died from a heart condition; that information should have prompted the plaintiffs to investigate the medical services at the jail and the medical care that Peterson received while incarcerated. If the plaintiffs had requested

Peterson's medical records and jail file, they would have uncovered the allegedly inadequate medical-treatment.[4]

At the very latest, the plaintiffs *did* discover the injury by September 4, 2012, the date that they filed their lawsuit against the Franklin County Sheriff's deputies. As the district court held, "it cannot be disputed that Plaintiffs knew of and understood Peterson's injury on September 4, 2012, when they filed a lawsuit for failure to provide adequate medical care. By that point, Plaintiffs knew of the injury Peterson allegedly suffered and retained counsel for the purpose of rectifying that injury." The plaintiffs, however, did not file their complaint against the defendants in this lawsuit until December 8, 2014, approximately 27 months later.

A reasonably diligent plaintiff would have requested the jail file and medical records in the spring of 2012, when the internal investigative-report was made public, or at the very latest, by September 4, 2012, when the plaintiffs filed their first lawsuit. Regardless of whether their cause of action accrued in May 2012 or by September 4, 2012, the plaintiffs did not file their lawsuit against the defendants here until December 8, 2014, after the two-year limitations period had expired. Therefore, we affirm the district court's conclusion that the plaintiffs' § 1983 claim is time-barred.

**State-law claims (wrongful death, survivorship, loss of consortium)**

In their motion-to-dismiss briefing, the plaintiffs conceded that their state-law claims were subject, at most, to a two-year statute of limitations, and on appeal, the plaintiffs make no attempt to dispute the two-year limitations period that the district court applied. Rather, as they did with respect to their § 1983 claim, the plaintiffs argue that the limitations period was tolled until the plaintiffs ascertained the identities of the defendants. Reasoning that "Ohio courts

---

[4] The plaintiffs acknowledged that they learned the identities of the defendants when they received Peterson's jail medical-file through discovery in the 2012 Action. However, the plaintiffs do not contest that they "could have arguably obtained Mr. Peterson's medical records at an earlier date."

apply the same general rules as federal courts regarding the time at which the statute of limitations begins to run," the district court concluded that the plaintiffs' state-law claims were time-barred for the same reasons that the plaintiffs' § 1983 claim was time-barred.

To the extent the plaintiffs raised state-law arguments, those arguments are unsuccessful. The plaintiffs contend that under *Akers v. Alonzo*, 605 N.E.2d 1 (Ohio 1992), their claims do not accrue in circumstances "where the patient had no way of knowing … that there had been another physician involved . . . ." 605 N.E.2d at 4. However, *Akers* is distinguishable from the plaintiffs' case. Here, the plaintiffs *would have* known of the involvement of the defendants if the plaintiffs had requested Peterson's medical records and jail file. And, under Ohio law, a plaintiff "must investigate, and discover," the identity of an alleged wrongdoer "once [the plaintiff] has reason to believe" that she has been wronged. *See Flowers v. Walker*, 589 N.E.2d 1284, 1288 (Ohio 1992). We thus affirm the district court's conclusion that the plaintiffs' state-law claims also are time-barred.

**Equitable Tolling**

Under the doctrine of equitable tolling, "the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (internal quotation marks and citations omitted). Equitable tolling, however, "is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace*, 549 U.S. at 396. Therefore, "the doctrine of equitable tolling is used sparingly by federal courts," and "[t]he party seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). "[W]here the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard

of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Dunlap v. United States*, 250 F.3d 1001, 1008 n.2 (6th Cir. 2001), *abrogated on other grounds by Hall v. Lebanon Corr. Inst.*, 662 F.3d 745 (6th Cir. 2011).

The plaintiffs are not entitled to equitable tolling under either a *de novo* or an abuse-of-discretion standard of review. The plaintiffs argue that "there was simply no information available" to them concerning the wrongdoing of the defendants and that they diligently pursued their claim through discovery in the earlier lawsuit against the Franklin County Sheriff's deputies. However, as discussed above, the plaintiffs could have requested Peterson's jail file and medical records, and if they had done so, they would have discovered the circumstances giving rise to their claim. The plaintiffs also could have explored the factual basis for their claim (and identified whom to sue) through an Ohio procedural device called an "action for discovery." *See* Ohio Rev. Code § 2317.48. The plaintiffs thus did not meet their burden of proving that they were entitled to equitable tolling. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

**<u>Other grounds</u>**

The defendants also raise alternative grounds for affirming the district court. Because we affirm the district court's judgment on statute-of-limitations grounds, we need not address these alternative grounds.

**CONCLUSION**

The plaintiffs' claims are barred by the applicable statutes of limitations, and the plaintiffs are not entitled to equitable tolling. We therefore AFFIRM the district court's order dismissing the plaintiffs' complaint as untimely.